UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

Dujon Manley,

        Petitioner,

    v.                                17-CV-953
                                            Decision and Order

Aaron Delmonte, et al.,

        Respondents.

---

The petitioner, Dujon Manley, is an immigration detainee currently held at the Buffalo Federal Detention Facility. On March 16, 2018, he filed an amended petition for a writ of habeas corpus under 28 U.S.C. § 2241, arguing that his indefinite detention without a hearing—or at least without an adequate hearing—violates the Due Process Clause of the Constitution. Docket Item 17. On March 30 and 31, 2018, the government responded. Docket Items 18, 19, 20. Manley replied on April 6, 2018, Docket Items 21, 22, and this Court heard oral argument on April 20, 2018.

## **BACKGROUND**

The Court assumes the parties' familiarity with the facts in the record, but a brief summary will provide some context. Manley is a "Jamaica[n] national seeking citizenship or asylum in the United States" who pled guilty to a felony offense under New York State law—Criminal Possession of a Controlled Substance in the Third Degree. Docket Item 17 at 4, 8. While Manley was serving his sentence for that crime, the Department of Homeland Security ("DHS") served him with notice that removal

proceedings had been instituted against him.  Docket Item 18-1 ¶ 8.  In January 2016, an Immigration Judge ("IJ") issued an order of removal, pursuant to 8 U.S.C. § 1227 (1)(2)(A)(iii), because Manley convicted an aggravated felony.  *Id.* at ¶¶ 9,10.  Manley was taken into custody and although the government promptly tried to remove him to Jamaica, he appealed the removal order to the Second Circuit and requested a stay (a request that was withdrawn but later renewed).  *Id.* at ¶¶ 11, 13-14, 21-22.

Manley has two pending legal challenges that directly impact the finality of his removal proceedings:  an appeal in the New York State Supreme Court, Appellate Division, Third Department, as well as his appeal in the Second Circuit.  More specifically, Manley appealed his underlying drug conviction, and that appeal remains pending in the Third Department.  In addition, after Manley reasserted his request for a stay of the removal order in the Second Circuit—a request that was granted, Docket Item 18-1 ¶¶ 24—he asked the Second Circuit to defer consideration of his removal order pending the outcome of his appeal in the Third Department.  *Manley v. Sessions*, 16-2640, Pet. Br. at 22; *see also* Docket Item 20 at 8-9.

Manley now argues that he is being held indefinitely and therefore is entitled to a bond hearing under the Due Process Clause of the Constitution, which provides that "[n]o person shall . . . be deprived of life, liberty or property, without due process of law." U.S. Const. amend V.  Although lengthy detention with no end in sight and no opportunity for procedural protections may well violate the Due Process Clause, that is not the situation here.

## **DISCUSSION**

The Immigration and Nationality Act ("INA") provides the procedure for deporting aliens depending on categories and classifications. *See* 8 U.S.C. § 1226. Although the statutory default allows aliens awaiting deportation to be released on bond, 8 U.S.C. § 1226(a), those, including Manley, who are subject to deportation because they have been convicted of certain crimes are in a class of their own, *see* 8 U.S.C. § 1226(c).

Aliens detained under 1226(c) may be released only if necessary for the limited purpose of witness protection. *See* 8 U.S.C. § 1226(c). In *Jennings v. Rodriguez*, 138 S. Ct. 830, 846 (2018), the Supreme Court very recently held that the statute means what it says, and that "aliens detained under [1226(c)] are not entitled to be released under any circumstances other than those expressly recognized by the statute." In connection with that decision, the Court vacated the Second Circuit's interpretation: that the INA required routine bond hearings for those detained under 1226(c) "to avoid serious constitutional concerns." *See Lora v. Shanahan*, 804 F.3d 601, 606 (2d Cir. 2015), *vacated* by *Shanahan v. Lora*, 2018 WL 1143819 (S. Ct. Mar. 5, 2018). But the Supreme Court expressly left open the question that Manley raises now: whether routine bond hearings are required by the Due Process Clause. *Jennings*, 138 S. Ct. at 851.

There may well be good reason to question the constitutionality of detention without a hearing—even for an alien held under 1226(c)—when the alien has been held for a long time and there is "no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001). For example, if an

3

alien is detained for years with little or no light at the end of the tunnel, a detention hearing like that addressed in *Lora* might well be required to comport with due process. But for two reasons, Manley does not fall into that category.

First, Manley's detention is not indefinite; in fact, there is a clear end in sight. As the Supreme Court explicitly noted in *Jennings*, a criminal alien detained under "1226(c) has a 'definite termination point': the conclusion of removal proceedings." *Jennings*, 138 S. Ct. at 846; *Demore v. Kim*, 538 U.S. 510, 528-29 (2003). And under the 1226(c), "the Government must detain an alien until" the final decision on removal is made. *Jennings*, 138 S. Ct. at 847. Because there is both a time frame for detention and a foreseeable event triggering actual removal, the due process concern that warranted a bond hearing in *Zadvydas* does not apply here.

Indeed, Manley is partly in control of the sequence of events that will end his detention and partly responsible for the length of the proceedings that have extended it. The delays that have prolonged the finality of Manley's removal order have largely been due to extensions and stays that he—or his attorney—requested. *See, e.g.*, Docket Item 20 at 5, 6 (listing extensions and delays sought by petitioner). To be clear, this in no way suggests that a petitioner should be punished or blamed for seeking additional review of administrative and judicial decisions; he has every right to do so. But having that right does not mean it may be exercised without consequence. *See Doherty v. Thornburgh*, 943 F.2d 204, 211 (2d Cir. 1991) (exercising litigation strategy to stall deportation "is perfectly permissible" but cannot be relied on to thereafter "claim that [] prolonged detention violates substantive due process").

Second, regardless of whether Manley was entitled to a hearing under the Due Process Clause, he received one. Here, the IJ found that Manley was convicted of possessing narcotics with the intent to sell them, "poses a danger to the community of the United States," and therefore should not be released. Docket Item 18-2 at 9. The IJ gave reasons for the finding of danger, applied the clear-and-convincing-evidence standard, and weighed Manley's serious drug conviction against mitigating factors, including Manley's "significant family ties in the United States." Docket Item 18-2 at 7,9. And the Board of Immigration Appeals ("BIA") affirmed the IJ's decision and analysis. *See id.* at 5,6 ("We find that the evidence of record . . . was clear and convincing and supported [the] Immigration Judge's determination . . . . Although the respondent has resided in this country for five years and has strong family ties, we nevertheless conclude on de novo review that the evidence . . . supports the continued detention of respondent without bond.").

Despite all that, Manley maintains that the IJ and the BIA did not adequately address the facts of his conviction and his family ties to the community. Docket Item 17-4 at 25. But the scope of jurisdiction that we retain to review an IJ decision is limited indeed. This Court lacks jurisdiction to review the discretionary decision of an IJ and can review only constitutional challenges. *See Enoh v. Sessions*, 2017 WL 2080278, at *5 (W.D.N.Y. May 15, 2017); 8 U.S.C. §1226(e). Because the IJ decided that the nature of Manley's felony was reason enough to find him a danger to the community, that decision is a discretionary one that we are not authorized to review.

Manley also contests the procedural adequacy of the hearing he received because it was neither recorded nor transcribed. Docket item 17-4 at 21. If a detained

5

alien *is* constitutionally entitled to a bond hearing, due process would require that the hearing be contemporaneously recorded and transcribed. *Nguti v. Sessions*, 2017 WL 1653030, at *7 (W.D.N.Y. May 2, 2017). But for the reasons stated above, Manley was not entitled to a hearing in the first place. What is more, Manley does not point to any discrepancy between the hearing he received and the IJ's written decision that might have been resolved by a transcript or recording.[1] Thus, Manley has not been prejudiced by the lack of recording or transcript. *See Singh v. Holder*, 638 F.3d 1196, 1209 (9th Cir. 2011) (finding no prejudice from a lack of recording or transcript when the petitioner has not demonstrated "any error that is not sufficiently apparent" from the written decision).

## **CONCLUSION**

Manley's detention has been lengthy and has kept him away from his loved ones legally residing in the United States. But he was convicted of a serious drug felony, had a hearing where a judge weighed that conviction against mitigating factors, and has engaged in a lengthy litigation strategy designed ultimately to secure his release and continued presence in the United States.

Judicial review like that requested by Manley takes time. But that does not ripen his detention into a constitutional claim.

---

[1] Manley claims that the IJ did not consider his family ties or the facts of his conviction. But according to the written decision, the IJ specifically considered both his "significant family ties in the United States and five-years in the Country" and the severity of his conviction. *See* Docket item 18-2 at 9, 6. Perhaps Manley wanted more depth in the analysis, but that critique is outside the scope of this Court's jurisdiction.

For the reasons stated above Dujon Manley's petition for a writ of habeas corpus under 28 U.S.C. § 2241 is DENIED.

SO ORDERED.

Dated: May 9, 2018
Buffalo, New York

*s/Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE